990 F.2d 1265
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank E. RUSSELL, Defendant-Appellant.
 Nos. 92-50011, 92-50016.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 11, 1993.*
Decided March 18, 1993.
 
 Before ALARCON, WILLIAM A. NORRIS and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Frank Russell appeals from the sentence of 20 months imprisonment imposed following his guilty plea to conspiracy to commit bribery of a public official in violation of 18 U.S.C. §§ 371 and 201(b), and conspiracy to submit a false claim against the United States in violation of 18 U.S.C. §§ 371, 287, 2. Russell argues that the district court erroneously increased his base offense level because the evidence did not support the district court's finding that he was a leader of the criminal activity for which he was convicted. We affirm.
 
 I.
 
 3
 Russell was employed as the Facilities Manager for the Armed Forces Radio and Television Service Broadcast Center (AFRTSBC) in Sun Valley, California, from July 7, 1985 through November 11, 1988. In this capacity, he was responsible for repairing and maintaining the facility and had authority to award maintenance contracts to various supply houses and contractors. Russell also approved the work that the contractors performed and controlled the submission of the contractors' billings to the United States Department of Defense.
 
 
 4
 In lieu of individual contracts, AFRTSBC utilized Blanket Purchase Agreements ("BPA") with its contractors. A BPA is a simplified method of fulfilling repetitive needs for supplies or services by establishing "charge" accounts with qualified sources of supply. Because a BPA is a yearly contract, it eliminated the need for individual contracts.
 
 
 5
 Among those companies who received BPAs from AFRTSBC were Beacon International Electric Supply (Beacon), Mount Aire Heating and Air Conditioning (Mount Aire), and Carley Maintenance Service (CMS). Beacon was owned by James Rea. Jack Brittain owned and operated Mount Aire and established CMS, which was operated by his daughter, Theresa Carley.
 
 
 6
 Russell began purchasing material from Beacon. Russell conducted business with Rea and Kevin Nusser, a Beacon employee. Russell believed that Rea was indebted to him for having awarded Beacon a BPA. The presentence report stated that Russell suggested that Rea pay for the maintenance of his car or perhaps purchase a new car for him. Russell also suggested that Rea pay him a commission and that Rea overcharge AFRTSBC, with the amount overcharged to be split between them. While Rea never paid Russell a bribe, he agreed to send invoices without providing the items to AFRTSBC during 1987 and 1988. He also agreed to misdescribe items on the Beacon invoices to enable Russell to purchase a specific item without it being billed as such.
 
 
 7
 Russell was involved in a similar scheme with Brittain, Mount Aire, and CMS. On February 23, 1988, CMS entered in a BPA with AFRTSBC to furnish electronic maintenance services to the facility. Brittain paid bribes to Russell after the establishment of the BPA. While Brittain asserts that Russell never directly demanded a bribe from him on the government contracts awarded to Mount Aire and CMS, Russell always spoke of family problems and "cried poverty." Brittain felt that these comments were Russell's way of asking for bribes. Brittain complied by paying Russell three checks totaling $4,000.
 
 
 8
 According to Brittain, these three checks were paid after Russell called Brittain on three separate occasions from May through August 1988. During the conversations, Russell related that he needed money. Brittain would then request his daughter, Theresa Carley, to write CMS checks addressed to Russell which Russell would pick up later that day. Upon Russell's request, Brittain also inflated bills to the government for work that was performed at AFRTSBC.
 
 
 9
 On May 2, 1991, the United States filed a four count indictment, No. 91-00398, against Russell and Brittain. This indictment charged Russell with one count of conspiracy to commit bribery of a public official in violation of 18 U.S.C. §§ 371 and 201(b) and three counts of receipt of a bribe by a public official in violation of 18 U.S.C. § 201(b).
 
 
 10
 On May 30, 1991, three additional indictments were filed against Russell and three other persons. Indictment No. 91-00467 charged Russell and Rea with one count of conspiracy to file false claims against the United States in violation of 18 U.S.C. §§ 371 and 287, and four counts of filing false claims against the United States in violation of 18 U.S.C. §§ 287 and 2. Indictment No. 91-00465, naming Dennis Ray Aikey and Russell, and Indictment No. 91-00466, naming Max Mark Pierce and Russell, alleged that Russell conspired with his codefendants to commit bribery of a public official and that Russell received bribes. Brittain, Aikey, Pierce, and Rea each pled guilty to conspiring with Russell.
 
 
 11
 Pursuant to a plea agreement, Russell pled guilty on September 25, 1991, to two of the counts contained in Indictment No. 91-00467: one count of conspiracy in violation of 18 U.S.C. §§ 371, 287, and one count of filing false claims against the United States in violation of 18 U.S.C. §§ 287, 2.[1] Russell also pled guilty to one count contained in Indictment No. 91-00398 for conspiracy in violation of 18 U.S.C. §§ 371, 201(b). Pursuant to the plea agreement, all the other counts contained in the four indictments against Russell were dismissed.
 
 
 12
 The Presentence Report set a base offense level of 10 pursuant to Guideline Section 2C1.1(a). The district court added four levels because Russell was a leader of a criminal activity involving five or more people under Sentencing Guidelines § 3B1.1(a).
 
 II.
 
 13
 In his opening brief, Russell contended that only the individuals involved in the counts he pled guilty to should be considered in adjusting his sentence under section 3B1.1 of the Sentencing Guidelines. Russell argued that because only three people were involved in the counts he pled guilty to, the district court erred in finding that he led a criminal activity of five or more people.
 
 
 14
 We deferred submission of this matter on May 5, 1992, pending our en banc reconsideration of the panel's decision in United States v. Fine, 946 F.2d 650 (9th Cir.1991). The en banc court's opinion now has been filed. United States v. Fine, 975 F.2d 596 (9th Cir.1992) (en banc). On December 8, 1992, we ordered the parties to file letter briefs discussing the impact of our decision in Fine on defendant's argument that the district court could take into consideration only those persons involved in the acts to which he pled guilty. In his response to our request for further briefing, Russell has conceded that our decision in Fine authorizes a district court to consider as coconspirators persons named in counts that have been dismissed. We agree with Russell that our en banc court's opinion in Fine does not dispose of the question whether the court's finding that he was a leader of a conspiracy was clearly erroneous.
 
 III.
 
 15
 Russell contends that his base offense level should not have been increased by four levels because he was not a leader of the criminal activity. The district court's finding that a defendant was an organizer or leader of a criminal activity is a finding of fact which we review for clear error. United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990).
 
 
 16
 Section 3B1.1(a) of the Sentencing Guidelines provides for a four level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Application Note 3 of the Commentary to Section 3B1.1 states that in determining a defendant's leadership role, the district court should consider several factors:
 
 
 17
 [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 18
 We have held that a defendant must have exercised "some degree of control or organizational authority over others" before a district court can find that he was an organizer or leader. Mares-Molina, 913 F.2d at 773. Russell contends that the evidence does not show that he exercised some degree of control over the co-conspirators. We disagree.
 
 
 19
 The presentence report clearly shows that the defendant was the common element in this scheme to defraud the United States. All the allegations of wrongdoing contained in the indictments involved Russell's employment at AFRTSBC. The other defendants had no connection to each other except for their connection to Russell and his activities at AFRTSBC. Further, Rea prepared several false invoices which overbilled AFRTSBC at Russell's request. Russell also solicited bribes from Brittain. Although Russell apparently never explicitly used the term "kickback" in his dealings with Russell, he clearly indicated that he needed money and accepted money from Brittain that he was not entitled to legitimately. Russell also instructed Brittain how much to overbill the work he did for AFRTSBC.
 
 
 20
 On these facts, the district court's finding that Russell was the leader of the criminal activity is not clearly erroneous. The record shows that Russell had decision-making authority, organized the offense, and had some degree of control over the actions of Rea and Brittain. See United States v. Castro, 972 F.2d 1107, 1113 (9th Cir.1992) (district court's conclusion that defendant was an organizer of the conspiracy was not clearly erroneous because, among other things, defendant was the only member of the conspiracy present at all the loadings of the cocaine into the tractor-trailers, and "events seemed to occur at [defendant's] bidding"), cert. denied, 61 U.S.L.W. 3584 (U.S. Feb. 22, 1993) (No. 92-7208); United States v. Carvajal, 905 F.2d 1292, 1296 (9th Cir.1990) (defendant was correctly found to be a leader of the conspiracy because the defendant instituted the cocaine transaction, stated where the cocaine sale would take place, who would deliver the cocaine, and who should receive the money).
 
 
 21
 Russell argues that he was not a leader because he did not receive a larger share of the fruits of the crime. This argument is meritless. Receipt of a larger share of the fruits of the crime is only one of the several factors that a district court can take into consideration in determining whether a person was a leader. U.S.S.G. § 3B1.1, comment (n. 3). There is no requirement that each factor needs to be present. The district court did not clearly err in according more weight to Russell's actions than to the possibility that others may have profited to a greater extent from the illegal activity. We note also that Russell was the only person who received bribes or kickbacks as a result of the conspiracy.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The violations of 18 U.S.C. §§ 287 and 2 of Indictment No. 91-00467 pre-date the effective date of the Sentencing Reform Act of 1984, and therefore, the guidelines were not applicable to those charges. These violations were calculated separately for sentencing purposes and are not at issue in this appeal